IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01443-MEH

FRIENDS OF ANIMALS,

     Plaintiff,

v.

DAVID BERNHARDT, in his official capacity as the Secretary of the Interior, and
U.S. FISH AND WILDLIFE SERVICE, an agency of the United States,

     Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff, an animal advocacy group, alleges that Defendant[1] violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, by improperly responding to Plaintiff's FOIA requests for documents related to the import of African elephant and giraffe products. Now before the Court are the parties' cross motions for summary judgment (ECF 21 and 25). The

---

[1] In their Motion, the above-captioned Defendants argue Secretary Bernhardt is not a proper defendant. Defs.' Mot. for Summ. J. 32. They contend the only proper defendant to a FOIA action is a federal agency and request that the Amended Complaint be dismissed as to Secretary Bernhardt. Plaintiff does not respond to this argument. Under FOIA, this Court has the power "to enjoin [an] *agency* from withholding agency records and to order the production of any agency record improperly withheld." 5 U.S.C. § 552(a)(4)(B) (emphasis added). The Court notes that the only proper defendant to a FOIA case is a federal agency. *See, e.g., Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010); *Ginarte v. Mueller*, 534 F. Supp. 2d 135, 136–37 (D.D.C. 2008); *Gallagher v. Nat'l Sec. Agency*, No. 18-cv-01525-GPG, 2018 WL 9413215, at *1 (D. Colo. Aug. 23, 2018). Although there is some disagreement about whether agency components, like the U.S. Fish and Wildlife Service ("FWS"), are subject to FOIA in their own names, *see Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 101 (D.D.C. 2012), in this case the Department of the Interior is certainly a party defendant. *Ginarte*, 534 F. Supp. 2d at 137. Accordingly, the Court discusses a single Defendant throughout the remainder of this Order.

motions are fully briefed, and the Court finds that oral argument will not assist in its adjudication of the motions.  Based on the record and the following analysis, the Court denies Plaintiff's Motion for Summary Judgment and grants the Government's Motion for Summary Judgment.

## FINDINGS OF FACT

Cross motions for summary judgment are examined under the usual Rule 56 standards, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Denver Inv. Advisors, LLC v. St. Paul Mercury Ins. Co.*, No. 17-CV-00362-MEH, 2017 WL 3130923, at *1 (D. Colo. July 24, 2017).  The following facts are undisputed unless otherwise cited.

**I.      The OLE and Form 3-177**

A.      The OLE

1.      The Office of Law Enforcement ("OLE") is a component of FWS that investigates wildlife crimes, regulates wildlife trade, and works to protect wildlife resources.

2.      When fully staffed the OLE employs 261 special agents and approximately 140 wildlife inspectors.

3.      The OLE also specifically employs two individuals dedicated to responding to FOIA requests directed to OLE records.

4.      OLE special agents enforce federal wildlife laws by, among other things, collecting evidence, interviewing witnesses, conducting surveillance, executing federal search warrants, making arrests, preparing cases for court, and assisting state and local counterparts with wildlife crime investigations.

5.      OLE wildlife inspectors defend United States ports against illegal wildlife trade by, among other things, processing declared imports and exports, intercepting wildlife contraband,

conducting proactive enforcement operations to stop smugglers, and working with special agents to investigate businesses and individuals engaged in wildlife trafficking.

6.      OLE special agents and wildlife inspectors routinely use the agency's database called the Law Enforcement Management Information System ("LEMIS") in performing their official duties.

7.      The information documented in LEMIS includes all FWS wildlife violations and all declared imports and exports of wildlife and wildlife products in the United States, both legal and illegal.

8.      The OLE manages LEMIS.

9.      The information contained in LEMIS is derived from the submission of a Form 3-177, as well as supporting documents that are required to be submitted with the Form 3-177, such as permits authorizing the transport of the wildlife.

        B.      Form 3-177

10.     Form 3-177 is the FWS's "Declaration for Importation or Exportation of Fish and Wildlife."

11.     The form requires any importer or exporter of wildlife to declare certain information for each import or export of wildlife or wildlife products.

12.     Some of the information collected includes the specific species being transported, the importer and exporter, the quantity and monetary value of the shipment, and relevant permit numbers.

13.     With limited exceptions, all importers and exporters are required to file completed, signed Form 3-177s upon the import or export of any wildlife.

14.     The OLE collects Form-3-177s and their supporting documents and adds them to LEMIS.

## II.      The Elephant Request

### A.      Request and Initial Response

15.      On May 9, 2018, Plaintiff submitted a FOIA request to FWS for documents relating to the import of African elephant skins and products ("Elephant Request").

16.      The Elephant Request sought "copies of all documents and records," from January 1, 2012 through the date of the request, "held by [FWS] relating to [the] import of African Elephant (*Loxodonta africana*) skins, hides, and products (excluding imports that consist solely of ivory), including . . . all information submitted on Form 3-177 or its predecessor forms."

17.      Because the Elephant Request sought Form 3-177 information, the request was routed to the OLE for processing.

18.      On August 30, 2018, the OLE issued a response to the Elephant Request and produced approximately 847 pages of responsive Form 3-177 records.

19.      In the response, the OLE notified Plaintiff that it withheld certain portions of these records under FOIA Exemptions 4, 6, and 7(C).

### B.      Appeal

20.      On January 9, 2019, Plaintiff filed a timely administrative FOIA appeal that met the requirements of 43 C.F.R § 2.59.

21.      Defendant did not respond to Plaintiff's Elephant Request appeal within FOIA's statutorily mandated twenty-workday time limit.

22.      As of the date Plaintiff filed its Complaint, Defendant had still not responded to Plaintiff's Elephant Request Appeal.

23.      Plaintiff has fully exhausted its administrative remedies regarding the Elephant Request.

## III.      The Giraffe Request

4

A.     Request and Initial Response

24.     On November 16, 2018, Plaintiff sent another FOIA request to FWS for information relating to New York and Connecticut residents who have filed Form 3-177s between January 2014 and November 2018 to import giraffes and their parts ("Giraffe Request").

25.     The Giraffe Request sought "copies of all documents, records and data held by [FWS] relating to New York and Connecticut residents who have filed FWS [F]orm 3-177 . . . between January 2014 and November 2018 to import African giraffes (*Giraffa camelopardalis*) and any part or product derived therefrom."

26.     Because the Giraffe Request sought Form 3-177s that were housed in the LEMIS database, this request was also routed to the OLE.

27.     In an April 2, 2019 email, Plaintiff agreed to allow FWS to send modified LEMIS data, limited to private citizens who imported giraffes and their parts to the ports of New York, New York, and Newark, New Jersey.

28.     On May 15, 2019, FWS informed Plaintiff that it had completed its response to the Giraffe Request and attached the LEMIS data in an Excel spreadsheet ("Giraffe Response").

29.     The Giraffe Response notified Plaintiff that FWS withheld 373 names of importers and exporters under FOIA Exemptions 6 and 7(C).

30.     FWS did not produce a *Vaughn* index [2] describing the information it withheld and specifying the reasons why the information was exempt.

B.     Appeal

31.     On May 31, 2019, Plaintiff filed a timely administrative FOIA appeal that met the

---

[2] "A Vaughn index is a compilation prepared by the government agency (or intervenor) listing each of the withheld documents and explaining the asserted reason for its nondisclosure. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)." *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 940 (10th Cir. 1990).

requirements of 43 C.F.R. § 2.59.

32.     FWS did not timely respond to the Giraffe Request appeal (twenty workdays).

33.     FWS denied Plaintiff's Giraffe Request appeal on September 27, 2019.

34.     Plaintiff has fully exhausted its administrative remedies regarding the Giraffe Request.

**IV.     Facts Related to the Relied-On Exemptions**

       A.     <u>Withholdings Under Exemption 4</u>

35.     As noted above, FWS withheld portions of the response to the Elephant Request under FOIA Exemptions 4, 6, and 7(C).

36.     Under Exemption 4, FWS withheld portions of a single, three-page Form 3-177 form, alleging that the withheld information is confidential, commercial, or financial information protected from disclosure.

36.     Specifically, information withheld under Exemption 4 included the name of the domestic importer, name of the foreign exporter, port of clearance, port of export, number of cartons containing wildlife, quantity and units of animals parts imported, the monetary value of the animal parts to be imported or exported, the country of species origin code, the name of the carrier, the name of the management authority, the contact name for the shipping agent/freight forwarder/customs broker, and the CITES/U.S. permit number.

37.     The entity that submitted the Form 3-177 is a business in the exotic leather market.

38.     The OLE contacted the entity that submitted the subject Form 3-177 multiple times regarding the nature of the information withheld under Exemption 4.  *See* Willis Decl. ¶¶ 69-71, ECF 25-1.

39.     The submitter initially explained that information relating to the quantity, value, country of origin, foreign exporter, and species of leather it imports is not public information. *Id*. at ¶ 69.

40.     There is a link on the FWS website where submitters can submit a Form 3-177 electronically that says "Privacy"; clicking on that link brings one to a page that says, in part, "we do not give, sell, or transfer any personal information to a third party except as might be required by law."

41.     FWS's regulations specifically direct the agency to maintain the confidentiality of potentially sensitive commercial information.  Willis Decl. ¶ 83.

        B.     Withholdings under Exemptions 6 and 7(C)

42.     FWS withheld parts of 496 of the 847 pages of the Elephant Request response under FOIA Exemptions 6 and 7(C), alleging that the information would constitute an unwarranted invasion of privacy.

43.      FWS withheld 373 names of importers and exporters from the response to the Giraffe Request under Exemptions 6 and 7(C).

44.     Form 3-177s enable OLE to enforce federal laws by effectively monitoring the import and export of wildlife products, ensuring that wildlife laws and regulations are being followed and facilitating the investigation and prosecution of enforcement actions.  Coil Decl. ¶ 29, ECF 25-2.

45.     The Privacy Act Statement included with the Form 3-177 available on FWS's website states, in part:

>       Information collected is also used to respond to requests made under the Freedom of Information Act and the Privacy Act of 1974. Information requested in this form is purely voluntary. However, submission of requested information is required in order to enforce any regulations that pertain to the wildlife contained in the shipment. Failure to provide all requested information may be sufficient cause for the [FWS] to deny the import or export of wildlife.

46.     On at least two previous occasions, Plaintiff has published the names of individuals involved in sport-hunting animal trophies on its website.

## LEGAL STANDARD

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may

be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Where, as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

## ANALYSIS

Plaintiff does not dispute the adequacy of Defendant's search for responsive documents but does contest Defendant's specific withholdings of the documents it provided. Therefore, the Court limits its inquiry to justiciable issues.[3] The Court will begin with a discussion of FOIA generally, then examine whether Defendant properly withheld the contested information pursuant to FOIA's Exemptions 4, 6 and 7(C).

---

[3] Plaintiff also requests a declaration "that Defendants violated FOIA by failing to timely respond to Plaintiff's Elephant and Giraffe FOIA appeals." Am. Compl. 15. Neither party proffers any argument related to the timeliness of Defendant's response to Plaintiff's appeals. FOIA is clear that an agency has twenty days to respond to FOIA appeals. 5 U.S.C. § 552(a)(6)(A)(ii). "But Defendant's failure to abide by the 20-day response time, by itself, presents no controversy with respect to whether a declaratory judgment should issue. If an agency does not issue a determination within the 20-day period, the requester may immediately seek judicial review, if he or she wishes to do so." *Pagosans for Pub. Lands v. U.S. Forest Serv.*, No. 06-cv-00556-JLK-DLW, 2006 WL 3951439, at *1 (D. Colo. Nov. 29, 2006), *report and recommendation adopted*, 2008 WL 1324241 (D. Colo. Mar. 31, 2008). Therefore, no controversy exists for the purpose of Plaintiff's request for declaratory relief. *Id.*

## I.   FOIA

FOIA "generally provides that the public has a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions." *Anderson v. U.S. Dep't of Health & Human Serv.*, 907 F.2d 936, 941 (10th Cir. 1990); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011) ("(FOIA) requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material.").  It provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  A district court in any FOIA action challenging an agency decision to withhold records reviews the agency's decision not to disclose de novo,  *Herrick v. Garvey*, 298 F.3d 1184, 1189 (10th Cir. 2002),  reading the act broadly in favor of disclosure and construing its exemptions narrowly.  *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d 1174, 1177 (10th Cir. 2011); *Anderson*, 907 F.2d at 941.

 "If an agency has been sued by an individual because the agency has refused to release documents, the agency 'bears the burden of justifying nondisclosure.'" *Herrick*, 298 F.3d at 1189 (quoting *Anderson*, 907 F.2d at 941); *San Juan Citizens All. v. U.S. Dep't of Interior*, 70 F. Supp. 3d 1214, 1218 (D. Colo. 2014) ("The burden is on the government to justify its decision to withhold or redact documents.").  "To satisfy its burden of proof under FOIA, an agency typically submits affidavits." *Hull*, 656 F.3d 1174, 1177 (10th Cir. 2011).

> [A]ffidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if the information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate.

*Id.* (quoting *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).

II.     **Whether Defendant Properly Withheld Information under Exemption 4**

FOIA specifies nine categories of documents that an agency need not disclose.  *See* 5 U.S.C. § 552(b).  Exemption 4 authorizes the withholding of "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  *Id*. § 552(b)(4).  "'If not a trade secret, for Exemption 4 to apply the information must be (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.'"  *Brown v. Perez*, 835 F.3d 1223, 1230 (10th Cir. 2016), *as amended on reh'g* (Nov. 8, 2016) (quoting *Anderson*, 907 F.2d at 944 (internal quotations omitted)).  In this case, Plaintiff argues Defendant failed to demonstrate that the withheld information is commercial and confidential.  *See* Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") 9-19, ECF 21; Pl.'s Reply in Support of its Mot. for Summ. J. and Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp./Reply") 20-29, ECF 29.  As Plaintiff makes no argument that the withheld information was not obtained from a person, the Court only considers whether there is any genuine dispute of material fact as to whether the withheld information was commercial and confidential.

A.     Plaintiff's Argument Regarding the Admissibility of Defendant's Evidence

Before examining whether the information was properly withheld under Exemption 4, the Court first addresses Plaintiff's argument that Defendant offers no admissible evidence to support its argument regarding the withholdings under Exemption 4.  In support of its Motion, Defendant proffers a declaration from Cathy Willis, Chief of the Branch of Freedom of Information Act and Records and FOIA Officer for FWS, explaining how Plaintiff's FOIA requests were processed, which exemptions were applied, and why those exemptions were appropriate. Ms. Willis attests,

> [t]he statements I make in this declaration are based on my review of the official FWS FOIA files and records of the FWS FOIA Program, my personal knowledge, and information acquired by me through the performance of my official duties, including conferring with agency employees directly involved in processing the FOIA requests at issue in this litigation.

Willis Decl. ¶ 3, ECF 25-1.   Ms. Willis's declaration goes on to provide information and explanation regarding Defendant's application of Exemption 4 to the Form 3-177 at issue in this case.

In its Response/Reply, Plaintiff contends that "[i]n their Response to Plaintiff's Motion for Summary Judgment and in their own Motion for Summary Judgment, Defendants . . . rely solely on hearsay to explain why they withheld the information of one importer of elephant parts."   Pl.'s Resp./Reply 1.   Plaintiff argues that Defendant offers no admissible evidence that demonstrates the entity that submitted the subject Form 3-177 has a commercial interest in the withheld information or that the information is confidential.   Plaintiff continues by citing dozens of its responses to Defendant's statements of facts.   *See id.* at 18.   In those responses, Plaintiff identifies eleven paragraphs from Ms. Willis's declaration, relied on by Defendant, that Plaintiff contends contain no indication that the assertions therein are based on Ms. Willis's personal knowledge and are inadmissible hearsay.   Plaintiff takes issue with Ms. Willis's conferral with other agency employees, *see, e.g., id.* at 3 ¶ 2, and with the entity that submitted the Form 3-177 at issue, *see, e.g., id.* at 3 ¶ 4.

In FOIA cases, "personal knowledge" is satisfied if the declarant "attests to [her] personal knowledge of the procedures used in handling a FOIA request and [her] familiarity with the documents in question."   *Barnard v. U.S. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008); *Schoenman v. FBI*, 575 F. Supp. 2d 166, 171 (D.D.C. 2008); *see also Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007) ("The declaration of an

agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge requirement.").  Based on the explanation Ms. Willis supplied in paragraph three of her declaration, her averments satisfy the personal knowledge requirement.  Case law also directs that a declarant's reliance on information gathered from other sources in a FOIA case does not amount to inadmissible hearsay.  *See, e.g., Williams v. FBI*, No. 2:13-CV-00056-DN, 2014 WL 1320262, at *8 (D. Utah Mar. 31, 2014) ("A variety of courts have held that FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties, even where those statements include hearsay." (internal quotations omitted)); *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) ("[A]lthough some of the information was relayed to [the declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56."); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Additionally, "[a]t the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." *Bryant*, 432 F.3d at 1122.  "Parties may, for example, submit affidavits . . . despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form." *Brown*, 835 F.3d at 1232 (internal quotations and citations omitted, alteration in original).  "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form." *Id*.  In this case, Defendant argues, and Ms. Willis has attested, that the entity that submitted the subject Form 3-177 would be willing to testify *in camera* or in court, if need be.  *See* Willis Decl. ¶ 72; Supp. Willis Decl. ¶ 8.

Accordingly, the Court rejects Plaintiff's argument that Defendant provides no admissible evidence that the withheld information is commercial or confidential and will consider Ms. Willis's declaration in evaluating the propriety of the withholdings under Exemption 4.

B.    The Withheld Information

Defendant withheld portions of one Form 3-177 under Exemption 4.  In its Motion for Summary Judgment, Plaintiff specifically identifies the following as included in the information Defendant redacted:

> the name of the U.S. importer, name of the foreign exporter, port of clearance, port of export, number of cartons containing wildlife, quantity and units of animal parts imported, the monetary value of the animal parts to be imported or exported, the country of species origin code, the name of the carrier, the name of management authority, the contact name for the shipping agent/freight forwarder/customs broker, and the CITES/U.S. permit number.

Pl.'s MSJ ¶ 9; *id*. at 9-10.  Although Plaintiff introduces this list with "included," "including," and "among other things," it does not identify any other specific pieces of information it is contending were improperly withheld.

In a supplemental declaration filed with Defendant's Reply, Ms. Willis states that "the agency provided to Plaintiff, on February 5, 2020, a new version of the Form 3-177 at issue which unredacts the following fields: the full CITES permit number, the port of clearance, the port of export, the name and country of management authority, and the name of the carrier." Supp. Willis Decl. ¶ 9, ECF 32-1.  Thus, the Court understands the following information continues to be withheld from the Form 3-177 under Exemption 4: the name of the domestic importer, name of the foreign exporter, number of cartons containing wildlife, quantity and units of animals parts imported, the monetary value of the animal parts to be imported or exported, the country of species origin code, and the contact name for the shipping agent/freight

14

forwarder/customs broker.

C.       Whether the Withheld Information Is "Commercial"

"'FOIA does not define the term "commercial," so courts have given the term its ordinary meaning.'"  *Brown*, 835 F.3d at 1230 (quoting *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 49 (1st Cir. 2015)).  "Consequently, '[t]he exemption reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency.'" *Id.* (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006));  *see also San Juan Citizens All.*, 70 F. Supp. 3d at 1219 ("A private entity may show that information is commercial or financial, for the purpose of Exemption 4, by showing that it has a 'commercial interest' in the information at issue.").

In its Motion for Summary Judgment, Plaintiff argues that the information FWS collects through Form 3-177 is not commercial in nature, and that Defendant has failed to establish how or why the entity that submitted the subject Form 3-177 has a commercial interest in the withheld information.  It proffers that "just because information relates in some way to a commercial transaction does not render it 'commercial' under FOIA Exemption 4"; "[i]nstead, information is only considered 'commercial' under FOIA Exemption 4 when the submitters[4] have a commercial interest in the information because the information itself is inextricably commercial."  Pl.'s MSJ 11.  Plaintiff continues that the submitter does not have commercial interest in the information withheld in this case, because that information is distinct from "the kinds of information that courts typically consider commercial," such as business sales statistics, customer lists, and financial conditions.  Pl.'s Resp./Reply 22.

_____

[4] This is the term used by the parties to refer to wildlife importers or exporters who submit a

Defendant argues that all of the information withheld under Exemption 4 in this case reflects business information about a particular commercial transaction, similar to an invoice.  It continues that because the submitter filed the Form 3-177 to declare the contents of a shipment it purchased from a vendor in the course of its operations as a business in the exotic leather market, and the information pertains to the buying and transporting of goods for business purposes, the information is commercial.  Defs.' Mot. for Summ. J. ("Defs.' MSJ") 16-17, ECF 25.  In its response to Plaintiff's motion and its reply, Defendant elaborates on this argument, explaining that the material Plaintiff seeks from the Form 3-177 would "reveal information about the nature and character of the submitter's business and the commercial transactions that it has undertaken, including its products, expenses, sourcing, vendor and volumes."  Defs.' Resp. 14, ECF 26.  Defendant further contends Plaintiff's argument that, in order to be commercial under Exemption 4, information must, "in and of itself," be "inextricably commercial" is not the law in the Tenth Circuit, which has noted that Exemption 4 applies whenever the provider of the information has a commercial interest in the information.  *Id*. at  15-16 (citing *Brown*, 835 F.3d at 1230).

The Court agrees with Defendant that the redacted information is "commercial information" under Exemption 4.  The submitter filed the withheld information to declare the contents of a shipment it purchased in the course of its operation as a business.  Although Plaintiff contends the information in this case is "distinct" from the "kinds of information that courts typically consider commercial," citing customer lists, overhead and operating costs, and financial conditions as examples,  Plaintiff does not meaningfully distinguish the information in this case.  Here, the withheld information (listed above) pertains to the source and vendor involved in a commercial transaction with the submitter as well as the volume and value of

---

Form 3-177 to Defendant.

goods the submitter was importing as part of its business.  Release of such information could reasonably result in harm to the submitter's business.  *See People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Human Servs. (PETA)*, 201 F. Supp. 3d 26, 42 (D.D.C. 2016), *aff'd*, 901 F.3d 343 (D.C. Cir. 2018) ("The disclosure of the *names of exporters* and the *names of airline carriers* . . . would enable competitors to gain an edge in this competitive market by obtaining valuable business data regarding the affected importer's supply chains, patterns of importation . . . and business relationships." (emphasis in original));  *id.* ("the disclosure of the *quantity of species* and the *quantities and sizes of crates* used during the importation process, when paired with the names of species, would provide competitors with valuable, detailed business data concerning each importer's capacity to import specific species and each importer's volume of business on a shipment-by-shipment basis.").

Given Exemption 4's "broad reach," *Brown*, 835 F.3d at 1230, and that the submitter has a clear commercial interest in the information submitted to the agency in this case, the Court finds that the information withheld pursuant to Exemption 4 is "commercial" for purposes of the exemption.

D.    Whether the Withheld Information Is "Confidential"

Until recently, the Tenth Circuit's test for whether records submitted involuntarily to an agency were "confidential" under Exemption 4 was adopted from the D.C. Circuit in *National Parks and Conservation Association v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).  *See Utah v. U.S. Dep't of Interior*, 256 F.3d 967, 969 (10th Cir. 2001).  Under *National Parks*, commercial or financial information submitted to the government involuntarily was confidential for purposes of the exemption if disclosure of the information would either (1) "impair the Government's ability to obtain necessary information in the future," or (2) "cause substantial harm to the competitive

position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770.

Last year, the Supreme Court abrogated the *National Parks* test in *Food Marketing Institute v. Argus Leader Media*, ⸺ U.S. ⸺, 139 S. Ct. 2356 (2019), rejecting the idea that confidentiality under Exemption 4 depends on whether disclosure of the information would cause substantial competitive harm, a requirement it traced to *National Parks*. *Id.* at 2363-64. The Court concluded that "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366. However, the Court left open the possibility that both of these conditions may not need to be met for the information, nonetheless, to still be "confidential." The Court held that while the first condition—that the information is both customarily and actually treated as private by its owner—must be met, it declined to decide whether privately held information loses its confidential character if it is communicated to the government without assurances that the government will keep it private. *Id.* at 2363.

1.   *Whether the Information Is Customarily and Actually Treated as Private by its Owner*

Plaintiff argues that the submitter in this case does not customarily or actually treat the information redacted from the Form 3-177 as private and, in fact, often makes the withheld information public. In support, Plaintiff cites a website for a customs broker and notes that the FWS releases lists of designated and non-designated ports of clearance. Pl.'s MSJ 14-15. Plaintiff speculates that because the submitter is likely a business, "[i]t is elementary that businesses must publicize their names and the goods they offer." *Id.* at 15. Defendant argues that the submitter keeps foreign vendors, import volumes, the country of origin of its elephant imports, and the specific species of elephant it imports private. It continues that although the

submitter's name itself is not confidential, the fact that it imports particular species from specific places is, and because the species information is disclosed, revealing the submitter's name would reveal business information the submitter otherwise keeps private.  Defendant also notes that while the submitter has a website, it does not advertise to the public or include pricing or availability information on its website, which simply acts as a visual reference for its mostly manufacturer customer base.  Plaintiff responds that the fact the submitter is a business weighs in favor of disclosure, because "it is hard to see how information could be deemed confidential when it is freely shared."  Pl.'s Resp./Reply 25 (quoting *Food Mktg. Institute*, 139 S. Ct at 2363). Plaintiff reasserts and relies on its contention that Defendant provides no admissible evidence that the submitter customarily and actually treats this information as private.

As discussed above, the Court may properly consider the evidence supplied in Ms. Willis's declaration; therefore, the Court rejects Plaintiff's contention that Defendant submits no admissible evidence demonstrating the submitter customarily and actually keeps the information private.  According to Ms. Willis, the OLE contacted the submitter multiple times regarding the nature of the information withheld under Exemption 4.  *See* Willis Decl. ¶¶ 69-71.  Before the new standard was announced in *Food Marketing Institute*, the submitter had already explained "information relating to the quantity, value, country of origin, foreign exporter, and species of leather it imports was not public information."  *Id*. at ¶ 69.  Due to the change in the law, Defendant contacted the submitter again to expressly address whether it customarily and actually treated the withheld information as private.  *Id*. at ¶ 71.  In addition to assurances from the submitter that it does not publicize this information or advertise it on its website, Ms. Willis visited the website herself to confirm the submitter's statements.  *Id*. at ¶ 76.  The submitter also detailed actions it takes when a customer re-exports an animal skin or purchases a skin to ensure

that information is disclosed only to the extent required by law. *Id.* at ¶¶ 77-78.

The fact that the submitter is a business, without more, provides no insight into whether this particular submitter actually and customarily keeps the withheld information confidential. Plaintiff erroneously relies on *PETA*, which held disclosure of a species name would not cause importers substantial harm, to support its argument that the submitter does not customarily keep the information in this case private.  Pl.'s MSJ 25-26 (citing *PETA*, 201 F. Supp. 3d at 41).   In this case, however, the species name has already been disclosed, and the submitter is concerned about keeping confidential other details related to the import of goods for its business, including its name and information related to the quantity, value, country of origin, foreign exporter, and species of leather it imports.  Notably, *PETA* found the disclosure of information similar to the data in this case—such as the quantity of animals imported, the descriptions of crates used in shipments, the names of the companies that export the animals, and the names of the airline carriers that transport the animals—would be substantially harmful.  *PETA*, 201 F. Supp. 3d at 41.  Additionally, *PETA* was decided before *Food Marketing Institute* and applied the now-inapplicable *National Parks* test.

 Under the *Food Marketing Institute* test, an agency must show the information is both customarily and actually treated as private by its owner for that information to be "confidential." Based on the evidence supplied by Defendant, the Court concludes the information FWS withheld from Plaintiff pursuant to Exemption 4 in this case satisfies this test.

2. *Whether the Information Was Provided to the Government under Assurances of Privacy*

The Supreme Court did not determine whether parties must satisfy the second half of the test announced in *Food Marketing Institute* for information to be considered "confidential" under Exemption 4.  139 S. Ct. at 2363 ("But what about the second condition: Can privately held

information lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private? As it turns out, there's no need to resolve that question in this case because the retailers before us clearly satisfy this condition too.").  Nonetheless, the parties here address the second half of the test and argue that it either is or is not met.

Plaintiff contends that the withheld information lost any confidentiality it had when the submitter communicated it to the government, because FWS expressly notifies submitters it may disclose Form 3-177 information under the provisions of FOIA.  Pl.'s MSJ 16.  Plaintiff also (inexplicably) relies on the following quote from the privacy notice on the FWS website where individuals can submit Form 3-177s electronically: "we do not give, sell, or transfer any personal information to a third party except as might be required by law."  *Id*. at 17.  Plaintiff further argues the FWS impliedly notified submitters the information would be released because it has publicly released LEMIS data in the past.  Defendant counters that the information was submitted with assurances of privacy because the agency's Privacy Act notice advises the public that information will not be disclosed to third parties unless the agency is required by law, and the agency's regulations direct the agency to maintain the confidentiality of potentially sensitive commercial information.  Defs.' MSJ 19-20; *see* Willis Decl. ¶ 83 (citing regulations).

Contrary to Plaintiff's interpretation, the Court understands Defendant's privacy notices, including those expressly cited and relied on by Plaintiff, as providing explicit assurances of privacy to individuals submitting Form 3-177s.  Defendant's notice assures submitters that their information will not be given, sold, or transferred to third parties except as required by law.  This is a direct assurance that their information is private.  The fact that the information *could* be disclosed pursuant to FOIA is true of all information held by the government.  FOIA's

application to government information alone is not enough to defeat any assurance of privacy in information held by the government; otherwise, the statute's mere existence would preclude the application of Exemption 4 in any instance.

The Court finds no dispute of material fact as to whether the information withheld pursuant to FOIA's Exemption 4 was confidential, commercial information obtained by the agency from a person. Therefore, the agency properly withheld this information from its response to Plaintiff's FOIA request. Accordingly, Defendants' Motion for Summary Judgment as to the contested information withheld pursuant to Exception 4 is granted, and Plaintiff's Motion as to the same is denied.

**III.      Whether Defendant Properly Withheld Information under Exemptions 6 and 7(C)**

Defendant relies on Exemptions 6 and 7(C) for the redactions of the names of foreign and domestic importers or exporters listed on responsive Form 3-177s.[5]  Exemption 6 of FOIA

---

[5] According to Plaintiff,

> In its Elephant Response, FWS claimed that a significant amount of information on 496 pages is exempt from disclosure under Exemptions 6 and 7(C). Specifically, FWS redacted, among other things, the name of U.S. importer, name of foreign exporter, name and country of management authority, certificate number, and contact name for the shipping agent/freight forwarder/customs broker. In addition, in its Giraffe Response, FWS withheld 373 U.S. importer names under Exemptions 6 and 7(C).

Pl.'s MSJ 19 (citations omitted). Defendant characterizes the contested material by saying, "Plaintiff seeks the names of submitters redacted from the agency's FOIA responses under Exemptions 6 and 7(C)," Defs.' MSJ 20, and "Plaintiff seeks the names of the individual submitters that the agency redacted from the Form 3-177s and associated documents under Exemptions 6 and 7(C)," Defs.' Resp. 23.

Both parties proffer arguments that address only the withholding of individuals' names. *See, e.g.,* Defs.' MSJ 24 ("In this case, the individuals' privacy interests in their names outweighs the public's interest in disclosure."); *id.* ("Exposing the identities of individuals on a subset of these pages would shed no light on the operations of the agency; it would simply reveal that these private individuals are associated with particular types of wildlife trade."); Pl.'s Resp./Reply 31 ("The only reason why Defendants argue that redaction of submitters' names is required under Exemption 6 is . . ."); *id.* at 35 ("Even if this Court concludes that FWS compiled this particular LEMIS data for law enforcement purposes, the individuals' privacy interest in

protects information about individuals in "personnel and medical files and similar files" when such disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "Similar files" refers broadly to "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Information need not be intimate or embarrassing to qualify for Exemption 6 protection.  *Id*. at 600.  In considering the application of Exemption 6, courts balance the privacy interests of the persons whose information would be released versus the public interest the requestors show.  *See*, *e.g.*, *Sheet Metal Workers Intern. Ass'n Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995).

Exemption 7(C) excuses "records or information compiled for law enforcement purposes" from disclosure "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In the Tenth Circuit, courts apply a three-part test to determine whether information is protected under Exemption 7(C): (1) whether the information was gathered for a law enforcement purpose; (2) whether there is a personal privacy interest at stake; and (3) if there is a personal privacy a stake, whether this privacy interest outweighs the public interest in disclosure. *World Pub. Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 827 (10th Cir. 2012).

While Exemption 7(C) of FOIA closely tracks Exemption 6, Exemption 7(C) is more protective of privacy.  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1234 (10th Cir. 2007) ("The former allows withholding of information that 'could reasonably be expected to constitute'

---

their names is not enhanced for several reasons.").  Therefore, the Court understands the parties' arguments as disputing the agency's withholding of the names of individuals pursuant to Exemptions 6 and 7(C).

an 'unwarranted' invasion of privacy, while the latter is limited to disclosures that "would constitute" an invasion of privacy that is 'clearly unwarranted.'" (citing *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994))). For this reason—as both parties observe—when the government claims that information is exempt under both provisions, courts often focus their analyses on Exemption 7(C). *See* Pl.'s MSJ 20-21 (citing *Humane Soc'y Int'l v. U.S. Fish & Wildlife Serv.*, 394 F. Supp. 3d 67, 74 (D.D.C. 2019)); Defs.' MSJ 25 (citing *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 681 (D.C. Cir. 2017)).

A.   Whether the Information Was Gathered for a Law Enforcement Purpose

The threshold inquiry under Exemption 7 is whether the withheld information was compiled for law enforcement purposes. Circuit courts have developed and adopted two approaches in evaluating this question: the "per se rule" and the "rational nexus test." *See Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1193 (10th Cir. 2011) (discussing). In *Jordan*, the Tenth Circuit explicitly adopted the "per se rule," under which "all records and information compiled by an agency, as defined in the FOIA, whose primary function is law enforcement, are compiled for law enforcement purposes for purposes of Exemption 7." *Id*. at 1197 (internal quotation, citation, and footnote omitted). While there is no defined test for whether an agency is primarily a law enforcement agency, the Tenth Circuit has looked to an agency's statutory mandate in making that determination. *E.g., id*. at 1194-95. The Tenth Circuit notes that agencies with both administrative and enforcement functions, or "mixed" function agencies, can still rely on Exemption 7; "[h]owever, they will not benefit from the per se rule." *Id*. at 1197 n.5. The court "advance[d] no theory as to what burden such agencies bear in establishing that records or information were compiled for law enforcement purposes." *Id*.

24

Plaintiff argues that the primary function of FWS is not law enforcement; therefore, the per se rule does not apply to the information it collected. Plaintiff continues that, even if the Court were to characterize FWS as a mixed-function agency, Defendant cannot show the LEMIS data at issue in this case was compiled for adjudicative or enforcement purposes. Defendant counters that the OLE is an "agency" as that term is defined under FOIA, and that its primary purpose is law enforcement. Defendant contends, therefore, the per se rule should apply to the information collected by the OLE.

        1.    *Application of the Per Se Rule*

Defendant makes no argument that FWS is a law enforcement agency subject to the per se rule. Rather, it contends that the OLE is entitled to application of the rule.

Under 5 U.S.C. § 551(1), "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency." Section 552(f)(1) in turn provides that "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." Defendant contends that the OLE, a component of FWS, satisfies FOIA's definition of agency and evidences independent authority because it has its own service manual, issues its own directives, issues permits, sets internal policies, and proposes regulations related to wildlife enforcement. Defs.' MSJ 27-28. Plaintiff responds that Defendant's focus on the OLE, rather than FWS itself, is erroneous and unsupported by case law. Plaintiff identifies courts in this circuit that have held separate agencies within federal departments, such as the Federal Bureau of Investigation ("FBI") and Federal Bureau of Prisons, are per se law enforcement agencies, and contend that

there are no cases in which a separate division within an agency has been held to be a per se law enforcement agency. *See* Pl.'s Resp./Reply 30 (gathering cases).

Defendant provides no case law to support its theory that the OLE is a per se law enforcement agency for purposes of FOIA's Exemption 7. Regardless of the OLE's purpose and function within FWS, Defendant's theory would put courts in the position of compartmentalizing and categorizing subdivisions of subdivisions of federal departments. This seems at odds with Section 552's provision that "agency" as defined in section 551(1) includes operational components of the executive branch like "any executive *department*" or "military *department*." 5 U.S.C. § 552(f)(1) (emphasis added). Also instructive is that the Tenth Circuit has looked to statutory mandates to determine whether an agency's primary purpose is law enforcement, but no such legislative guidance exists for administratively created subdivisions or subdivisions of agencies. Additionally, the suggested "slicing and dicing" categorization becomes increasingly impractical for purposes of applying the per se rule to future FOIA withholdings, as multiple subdivisions within an agency may cooperatively collect, store, or utilize disputed information. Accordingly, the Court rejects Defendant's argument that the OLE is a law enforcement agency subject to the per se rule, such that all records and information it collects would be deemed compiled for law enforcement purposes under Exemption 7.

2.   *Application of a Standard for Mixed-Function Agency Information*

That the OLE and FWS are not per se law enforcement agencies does not end the inquiry as to Exemption 7's threshold question. Defendant contends, in the alternative, that FWS is a mixed-function agency that compiled the information at issue in this case for law enforcement purposes.

There have been few cases in this circuit addressing whether information withheld under

Exemption 7 was compiled for law enforcement purposes since the Tenth Circuit adopted the per se rule in *Jordan*. In most of those cases, there was either no dispute as to this question or the information was compiled by an agency that courts determined clearly fell under the per se rule, such as the FBI. *See Smith v. U.S. Immigration & Customs Enf't*, No. 16-cv-02137-WJM-KLM, 2019 WL 6838961, at *17 (D. Colo. Dec. 16, 2019) ("No party disputes that [the United States Immigration and Customs Enforcement] is a law enforcement agency."); *World Pub. Co.*, 672 F.3d at 827 ("Here, it is undisputed that the photos were taken for a 'law enforcement purpose.'"); *Williams v. U.S. Dep't of Justice*, No. 2:17-CV-699 TS DBP, 2019 WL 6700299, at *7 (D. Utah Dec. 9, 2019) ("[T]he Tenth Circuit has adopted a per se rule that all records and information compiled by an agency . . . whose primary function is law enforcement, are compiled for law enforcement purposes for purposes of Exemption 7. The FBI is such an agency." (internal quotations and footnotes omitted)); *Watters v. U.S. Dep't of Justice*, No. 10-CV-270-GKF-PJC, 2013 WL 4482968, at *11 (N.D. Okla. Aug. 20, 2013), *aff'd*, 576 F. App'x 718 (10th Cir. 2014) (determining the FBI and Bureau of Alcohol, Tobacco, Firearms and Explosives are law enforcement agencies under the per se rule); *Al-Turki v. U.S. Dep't of Justice*, 175 F. Supp. 3d 1153, 1192 (D. Colo. 2016) (finding, without applying the per se rule, that documents compiled by the FBI were compiled for law enforcement purposes).

The only case in this circuit since *Jordan* that has addressed whether information collected by a mixed function agency was compiled for law enforcement purposes is *Whitson v. U.S. Forest Serv.*, 253 F. Supp. 3d 1133 (D. Colo.), *on reconsideration*, 253 F. Supp. 3d 1096 (D. Colo. 2017). After noting that "there can be no dispute that the primary function of the Forest Service, unlike the FBI, is not law enforcement," the court determined that the Forest Service had "failed to demonstrate that it nonetheless qualifies as a mixed-function agency." *Id.*

The court continued that even if the Forest Service could be properly characterized as a mixed-function agency, "it still bears the burden of showing that the withheld information was compiled for adjudicative or enforcement purposes." *Id.* at 1144-45 (citing *Stern v. F.B.I.*, 737 F.2d 84, 88 (D.C. Cir. 1984)).[6]

In light of the fact that *Jordan* advanced no theory as to what burden mixed function agencies bear in establishing that information was compiled for law enforcement purposes, the parties here pulled from different bodies of case law to argue under nearly identical standards,[7] the main difference being the specificity of the law enforcement purpose for which the information was collected. While Plaintiff contends that disputed information must have been gathered in relation to a particular enforcement proceeding or investigation to satisfy Exemption 7's "compiled for law enforcement purposes" prerequisite, *see* Pl.'s Mot 24; Pl.'s Resp./Reply 31, Defendant argues the requirement is satisfied when the information was compiled for a purpose within the sphere of the agency's enforcement authority, *see* Defs.' MSJ 29, Defs.'

---

[6] The USFS moved for reconsideration and proffered additional evidence that the information withheld was compiled for law enforcement purposes. *Whitson*, 264 F. Supp. 3d at 1100.

[7] Plaintiff relies, in part, on *Whitson*, advocating that "the burden is on the agency to demonstrate that it is a mixed-function agency that exercises a law enforcement purpose and that the records at issue were compiled for adjudicative or enforcement purposes." Pl.'s MSJ 22. It continues that "an agency with both administrative and law enforcement functions must demonstrate that its purpose in compiling the particular document fell within its *sphere of enforcement authority*." *Id.* (quoting *Fine v. U.S. Dep't of Energy, Office of Inspector Gen.*, 823 F. Supp. 888, 907 (D.N.M. 1993)) (emphasis added). Defendant, meanwhile, explicitly borrowed from the second prong of the rational nexus test in noting that "other circuits have held that if the primary function of an agency is not law enforcement, then the agency must demonstrate that it had a purpose falling within its *sphere of enforcement authority* in compiling the particular document." Defs.' MSJ 27 (internal quotation omitted) (emphasis added). While Plaintiff's motion argues that case law relying on the rational nexus test is not persuasive in this case, Plaintiff also contends that, "an agency record was compiled for a law enforcement purpose when 'it was created or acquired in the course of an investigation related to the enforcement of federal laws and the *nexus* between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its *rationality*." Pl.'s MSJ 22 (quoting *Al-Turki*, 175 F. Supp. 3d at 1191) (emphasis added).

Resp. 27-28.

Specifically, Plaintiff contends that Defendant cannot show it compiled the information at issue in this case for adjudicative or enforcement purposes, because the Form 3-177 data is collected and compiled in LEMIS for routine administrative purposes, not "in relation to any enforcement proceeding or because of the investigation of any particular incident." Pl.'s MSJ 24. Defendant argues that the records in this case were compiled for a purpose falling within the sphere of OLE's enforcement authority. To support its argument, Defendant provides a declaration from Daniel Coil, Special Agent with the OLE since 2002. Coil Decl. ¶ 1, ECF 25-2. Mr. Coil attests that Form 3-177s "enable OLE to enforce federal wildlife and conservation laws throughout the United States by effectively monitoring the import and export of wildlife products, ensuring that wildlife laws and regulations are being followed, and, if necessary, facilitating the investigation and prosecution of enforcement actions against those who violate wildlife laws." *Id.* at ¶ 29. Defendant asserts that all of the documents at issue are housed in OLE's LEMIS database, "which is one of the primary tools that OLE uses in performing its law enforcement functions." Defs.' MSJ 29.

The standard and argument advanced by Plaintiff is similar to one expressly rejected by the Tenth Circuit in *Jordan*. 668 F.3d at 1193. In declining to adopt the appellant's proposed interpretation of Section 552(b)(7), the Tenth Circuit emphasized that "[t]he statute refers to 'law enforcement purposes,' not 'law enforcement proceedings.'" *Id*. It continued that "[n]o enforcement proceeding is necessary to satisfy the law enforcement purpose criterion," *id*., and "[t]he ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses . . . but also proactive steps designed to prevent criminal activity," *id*. (quoting *Milner*, 562 U.S. at 582 (Alito, J., concurring)). "Thus, the phrase also reasonably

29

encompasses information used to fulfill official security and crime prevention duties." *Id.* (internal quotation omitted).

The Court finds Defendant has proffered sufficient evidence demonstrating that the disputed information in this case was compiled for "adjudicative or enforcement purposes." *Whitson*, 264 F. Supp. 3d at 1099.  Plaintiff admits that the OLE investigates wildlife crimes, regulates wildlife trade, and enforces federal wildlife laws.  OLE agents, among other things, collect evidence, interview witnesses, conduct surveillance, execute federal search warrants, make arrests, prepare cases for court, and assist state and local counterparts with wildlife crime investigations.  OLE wildlife inspectors defend United States ports against illegal wildlife trade by processing declared imports and exports, intercepting wildlife contraband, conducting proactive enforcement operations to stop smugglers, and working with special agents to investigate businesses and individuals engaged in wildlife trafficking.  Both OLE agents and investigators use LEMIS, acronym for *Law Enforcement* Management Information System (emphasis added), in performing their duties.  Special Agent Coil further attests to dozens of specific ways the OLE uses the information on Form 3-177s for enforcement purposes.  *See* Coil Decl. ¶¶ 16-28.  Based on the evidence submitted, the Court concludes that Defendant has met its burden of demonstrating that the information it seeks to withhold from Plaintiff pursuant to Exemption 7 was compiled for "law enforcement purposes."

B.     Weight of the Privacy Interest against Public Interest in Disclosure

The Court proceeds to examine the privacy interest at stake as weighed against the public interest in disclosure under Exemption 7(C), rather than Exemption 6, because Exemption 7(C) is more protective of privacy.  *Al-Turki*, 175 F. Supp. 3d at 1178 ("'[T]he privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same,' although Exemption 7(C) is broader."

(quoting *Judicial Watch v. U.S. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004))).  While Exemption 7 allows an agency to withhold information that "could reasonably be expected to constitute" an "unwarranted" invasion of privacy, Exemption 6 is limited to disclosures that "would constitute" an invasion of privacy that is "clearly unwarranted."  *See Trentadue*, 501 F.3d at 1234.

        1.    *Privacy Interest at Stake*

The second part of the three-part test to determine whether information is protected under Exemption 7(C) is whether there is a personal privacy interest at stake.  *World Pub. Co.*, 672 F.3d at 827.  Plaintiff argues that the submitters do not have a substantial privacy interest in the requested LEMIS data in this case because it is a list of individual names without additional personal information, like home address or financial information, and is not information that will subject the submitters to embarrassment or harassment.[8]  Defendant argues that the privacy interest protected by Exemption 7(C) is at its apex in cases like this one where "the information sought is in the Government's control as a compilation, rather than as a record of 'what the government is up to.'"  Defs.' MSJ 30 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 780 (1989)).  Defendant also asserts that releasing individuals' names in this case could reasonably lead to harassment, because Plaintiff has previously

---

[8] Plaintiff also contends that the submitters waived any privacy interest they have in the information by voluntarily providing the information to the government.  Pl.'s MSJ 28.  Plaintiff relies, in part, on the Privacy Act Statement included with the Form 3-177 available on FWS's website which states, "[i]nformation requested in this form is purely voluntary."  Pl.'s Resp./Reply at 38.  Plaintiff's selective quoting fails to note the sentences that then follow: "Information requested in this form is purely voluntary. *However, submission of requested information is required* in order to enforce any regulations that pertain to the wildlife contained in the shipment. *Failure to provide all requested information may be sufficient cause for the U.S. Fish and Wildlife Service to deny the import or export of wildlife*."  *See* Ex. D to Pl.'s Resp./Reply 2, ECF 29-4 (emphasis added).  Therefore, Plaintiff's argument is unavailing.

published the names of individuals involved in sport-hunting animal trophies on its website and such public dissemination could engender harassment by other individuals in wildlife advocacy. *See* Willis Decl. ¶¶ 100-101. Plaintiff responds that Defendant twists precedent in arguing the privacy interests in this case are at their apex, and Defendant provides no evidence that the release of individuals' names is likely to result in harassment or that the submitters fear such harassment.

The Court agrees with Defendant that the submitters have a privacy interest in their names. "Typically, individuals have a privacy interest in preventing the disclosure of information compiled for law enforcement purposes." *Humane Soc'y Int'l.*, 394 F. Supp. 3d at 76. Beyond this, the information sought in this case is a list of individuals' names that are listed in a government database because of those individuals' personal, commercial, or educational transactions in wildlife trade. These individuals have a privacy interest in preventing the public from connecting their names to the other information already disclosed in response to Plaintiff's requests. *Id.* Additionally, the Court finds Defendant's argument that releasing the names of individual submitters could reasonably lead to harassment more than speculative. Plaintiff acknowledges that it has previously published the names, cities, and states of individuals who were issued sport-hunted trophy permits. Pl.'s Resp./Reply 17 ¶ 60; Willis Decl. ¶¶ 100-01. Although Plaintiff contends Defendant "only cite[s] an extreme and unusual case of harassment" of one individual whose name was not disclosed through FOIA, Defendant identifies several cases of extreme harassment included in Plaintiff's briefing and supporting documentation. *See* Defs.' Reply 32-33, ECF 32.

      2.    *Whether Disclosure Would Constitute an Unwarranted Invasion of Personal Privacy*

The third and final part of the test for protecting information under Exemption 7(C) is

whether the identified privacy interest outweighs the public interest in disclosure. *World Pub. Co.*, 672 F.3d at 827. "The statutory direction that the information not be released if the invasion of personal privacy could reasonably be expected to be unwarranted requires the courts to balance the competing interests in privacy and disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Courts "must assess the extent to which disclosure would contribute to the 'public understanding of the operations or activities of the government,' not the interests of the requesting party." *Trentadue*, 501 F.3d at 1233 (quoting *U.S. Dep't of Def.*, 510 U.S. at 495). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose"; however, that purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files [] that reveals little or nothing about an agency's own conduct." *Reporters Comm. for Freedom of Press*, 489 U.S. at 773.

The Supreme Court has recognized that when the personal privacy concerns protected by Exemption 7(C) are present,

> the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Favish*, 541 U.S. at 172. Because Defendant has identified a privacy interest in the submitters' withheld names, the Court must determine whether Plaintiff has "establish[ed] a sufficient reason for the disclosure." *Id.*

Plaintiff argues that "the public has a substantial interest in wildlife conservation and endangered species protection, and the FWS's regulation of both." Pl.'s MSJ 32. Plaintiff further argues releasing the submitters' names would help the public understand "what the government is up to" by providing insight into the FWS's permitting decisions, any outside

influence on the agency, and the agency's monitoring of international wildlife trade.

Although Plaintiff repeatedly claims that releasing the names of individuals would shed light on the agency's permitting decisions, Defendant counters that the vast majority of information withheld under Exemptions 6 and 7(C) is not permits or permit applications. Defs.' Reply 36 ("[O]nly a small subset of the documents in the LEMIS records are permit applications or 'permits' issued by FWS; the majority of documents consist of Form 3-177s, e-declaration confirmation pages, and permits issued by the exporting countries—not by the United States government."). It also notes that, with limited exception, the OLE is not the division within FWS that issues permits, and Plaintiff has received unredacted information in response to prior requests made to the permitting division. *Id.* at 36 n.9.

Plaintiff also argues that understanding potential outside influence on an agency's decision is a public interest that justifies release of the individuals' names under FOIA. Defendant contends that this argument is rooted in a mere speculation that the agency is not performing its duties the way it is supposed to and disclosure would bring these improprieties to light. Defs.' Reply 37. Plaintiff, however, emphasizes that potential outside influence on an agency does not necessarily mean officials acted improperly. While Plaintiff tries to posture its argument in terms of insight into what FWS is doing, its points illustrate that Plaintiff is equally concerned with what the individuals whose names have been withheld are doing. In its Motion, Plaintiff contends that "refusing to release the redacted information prevents the public from determining who is importing African elephant and giraffe parts and in what numbers." Pl.'s MSJ at 33. Elsewhere, Plaintiff asserts that it "has previously used trophy hunter's names . . . to determine how many trophy hunters have donated to political parties[,] how much they donated

. . . [and] which and how many of the trophy hunters are connected to Safari Club International." *Id.* at 34; *see also* Pl.'s Resp./Reply 39-41.

Information that would shed light on an agency's performance of its statutory duties is relevant in the FOIA balancing analysis; however "[d]isclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *Reporters Comm. for Freedom of Press*, 489 U.S. at 765.   In response to Plaintiff's requests, Defendant provided numerous Form 3-177s and their underlying documentation, and a modified LEMIS report containing information about the number, types, values, dates, and locations of the types of imports at issue in Plaintiff's requests.  Defendant contends the OLE did not redact the vast majority of information on these documents, nor did it redact the names of businesses under Exemptions 6 or 7(C).  Defs.' MSJ 24.  It is difficult to see how any additional insight on the agency's operation, which may be determined based on the release of individuals names, outweighs the privacy interests in this case.  This is especially true given the Plaintiff's expressed intent to use the information to determine additional personal details about these individuals, including their political affiliations and memberships in private clubs.  Plaintiff can request and possesses permitting information from the division of FWS that issues permits in its pursuit of insight into FWS's permitting process, rather than seek such insight through enforcement data properly withheld under Exemption 7(C).

Exemption 7(C) requires courts "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information compiled through the power of the State." *Favish*, 541 U.S. at 172.  The Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably

be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" *Reporters Comm. for Freedom of Press*, 489 U.S. at 780.   In this case, disclosing the names of individuals would not likely advance a significant public interest, *Favish*, 541 U.S. at 172, and the Court finds, balancing the competing interests in privacy and disclosure, that the invasion of personal privacy from release could reasonably be expected to be unwarranted.   Accordingly, Defendants' Motion for Summary Judgment as to the contested information withheld pursuant to Exceptions 6 and 7(C) is granted, and Plaintiff's Motion as to the same is denied.

## <u>CONCLUSION</u>

The evidence supplied by Defendant has satisfied its burden of justifying nondisclosure. Accordingly, Plaintiff's Motion for Summary Judgment [filed October 30, 2019; ECF 21] is **denied,** and Defendants' Motion for Summary Judgment [filed November 25, 2019; ECF 25] is **granted**.

Entered and dated at Denver, Colorado, this 24th day of April, 2020.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

36